IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EARNEST J. FILES, JR., #107834  )
            )
    Plaintiff,      )
            )
    v.        )  CIVIL ACTION NO. 2:18-CV-53-SRW
            )     (WO)
            )
JEFFERSON S. DUNN, et al.,   )
            )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Earnest J.  Files, Jr., a state inmate, challenging actions which occurred during his prior term of incarceration at Kilby Correctional Facility ("Kilby").  Doc. 13.  Files names Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections; Vivian McQueen, an analyst for the Department's Classification Review Board; Jimmy Thomas, a warden at Kilby; Alicia White, a classification specialist supervisor; Angela Baggett, Assistant Director of Classification for the Alabama Department of Corrections; and Cassandra Conway, Director of Classification for the Alabama Department of Corrections, as defendants in this civil action. In the amended complaint, Files challenges the constitutionality of the conditions in cell P-1, where he was first housed for a few days upon his arrival at Kilby from the Talladega County Jail.  Files also complains that the

---

[1]All documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

defendants thereafter deprived him of due process by placing him in the restrictive housing unit on close custody without a hearing.  Files next contends that the defendants violated his equal protection rights with respect to his initial classification and placement in restrictive housing because other inmates transferred with him from the Talladega County Jail to Kilby were not subjected to these adverse actions. Finally, Files alleges that his placement in close custody resulted from a conspiracy among the defendants.  Files sues the defendants in their individual capacities, Doc. 13 at 3, and seeks monetary damages and any other relief to which he may be entitled for the alleged violations of his constitutional rights.  Doc. 13 at 10.

The defendants filed a special report, supplemental special reports and relevant evidentiary materials in support of their reports, including affidavits and certified prison records, addressing the claims presented by Files.  In these filings, the defendants deny that they acted in violation of Files' constitutional rights.

The court issued an order directing Files to file a response, supported by affidavits or statements made under penalty of perjury and other evidentiary materials, to the arguments set forth by the defendants in their report.  Doc. 37.  This order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time allowed the plaintiff for filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this

order, rule on the motion for summary judgment in accordance with the law."  Doc. 37 at 3 (emphasis in original).  Files filed a declaration in response to the defendants' reports on August 17, 2018.  Doc. 39.

Pursuant to the above-referenced order, the court now treats the defendants' special report and supplements to the report as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and response filed by Files, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed.R.Civ.P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits or properly sworn statements], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no

3

genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, sworn statements, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can

4

point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose as an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed.R.Civ.P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]"  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir.

1990).  In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact.  *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to a plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525.  Thus, a plaintiff's *pro se* status alone does not compel this court

7

to disregard elementary principles of production and proof in a civil case. Here, after a thorough review of all the evidence which would be admissible at trial, the court concludes that Files has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *See Matsushita*, 475 U.S. at 587.

### III.  QUALIFIED IMMUNITY

The defendants raise the defense of qualified immunity to the claims set forth by Files, Doc. 26 at 1, against them in their individual capacities. Doc. 13 at 3. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit." *Lassiter v. Ala. A&M University Bd. of*

8

*Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Even so, qualified immunity is only an affirmative defense to a request for damages; it has no impact on requests for declaratory or injunctive relief. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Alexander*, 457 U.S. 800 (1982); *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. In this case, it is clear "that the defendants were acting within their discretionary authority[]"as correctional officials at the time of the challenged actions so "the burden shifts to [Files] to show that qualified immunity is not appropriate." *Id.*; *see also Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Files must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252,

1264 (11th Cir.2004); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation.").  This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id*.; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements "in whatever order is deemed most appropriate for the case.").

## IV.   RELEVANT FACTS

In 2017, the Circuit Court of Talladega County, Alabama convicted Files on six counts of capital murder and sentenced him to life without parole on each of these convictions. Doc. 27-6 at 2. On December 26, 2017, Files was transferred from the Talladega County Jail to Kilby for service of his sentences within the custody of the Alabama Department of Corrections ("ADOC"). Doc. 13 at 4. Kilby serves as the receiving and classification center for the ADOC.  Upon Files' arrival at Kilby, correctional officials placed him in P-1, a cell in the psychiatric area of the facility, and subsequently transferred him to F-12, a segregation cell in the restrictive housing unit, on December 29, 2017.  Doc. 13 at 4–5.

On January 2, 2018, defendant White initially recommended close custody classification for Files, and an analyst for the Central Review Board approved this

recommendation on January 8, 2018.  Doc. 13 at 9.  Correctional officials assigned Files to close custody and confinement to restrictive housing in administrative segregation pursuant to the Classification Manual, which requires that inmates sentenced to life without parole "be housed in Close custody for a minimum of a thirty (30) day observation and adjustment period.  All time served in restrictive housing prior to initial classification will be credited toward the observation period." Doc. 27-9 at 5.  On January 24, 2018, defendant White recommended that Files' custody level be reduced to medium custody, and defendant Conway approved this recommendation on January 25, 2018.  Doc. 13 at 9.  The following day, correctional officials transferred Files to Donaldson Correctional Facility.

## V.  DICUSSION OF CLAIMS[2]

### A.  Conditions

Files complains that while in P-1 he experienced "extremely harsh conditions," suffering exposure to roaches and rats.  Doc. 13 at 5.  Files alleges that these conditions violated his constitutional rights as protected by the Eighth Amendment.

The correctional defendants deny that the conditions about which Files complaints rose to the level of a constitutional violation. The evidentiary materials filed herein establish that Kilby contracts with a private extermination company to control insects and

---

[2]The court limits its review to the alleged constitutional violations identified in the amended complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

rodents, including roaches, rats, mice and crickets.  Doc. at 34-3 at 1. The defendants contend that Files could have filed a request with prison personnel regarding the alleged presence of rats and roaches to assist in ridding his cell of these pests, but he failed to do so.  Doc. 34-1 at 2.

Only conditions that deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id*. at 348 (citation omitted).  Prison conditions which may be "restrictive and even harsh, [ ] are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment.  *Id*.  Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency."  *Id*. at 345–46.  "[T]he Constitution does not mandate comfortable prisons."  *Id*. at 349 (internal quotations omitted). "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotations and citations omitted). Although the Constitution "does not mandate comfortable prisons . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349).

Thus, it is well-settled that the conditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)); *Helling*, 509 U.S. at 31–32. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Crosby*, 379 F.3d at 1289–90. To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028–29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk,

13

but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The living conditions within a correctional facility constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347.  "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency. . . .  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.

In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards.  *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).  The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "***[s]ome*** conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces

14

the deprivation of a single, identifiable human need. . . .  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 304–05 (1991) (emphasis in original) (internal quotation marks omitted).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, mere negligence does not justify liability under section 1983.  *Id*.

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the defendants, Files must first demonstrate an objectively substantial

risk of serious harm existed to him and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.

Despite Files' allegations regarding the conditions present at Kilby, he does not establish that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298–99; *Rhodes*, 452 U.S. at 347. The conditions in P-1 referenced by Files—*i.e.*, the presence of pests—though uncomfortable, inconvenient, unpleasant and/or objectionable, were not so extreme as to violate the Constitution. *See Baird*, 926 F.2d at 1289. Furthermore, Files fails to demonstrate deliberate indifference or reckless disregard by the defendants with respect to his health or safety relative to these conditions. Specifically, Files does not identify any particular condition of which the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed to him. The record is also devoid of any evidence showing that the defendants drew the requisite inference. Under these circumstances, Files is entitled to no relief on his conditions claims.

## B.  Due Process

Files alleges that the defendants deprived him of due process by assigning him to close custody and placing him in segregation for twenty-nine days without notice and an opportunity to be heard. Doc. 13 at 4. The defendants deny any violation of Files' due process rights.

It is undisputed that inmates received at Kilby who are sentenced to life without parole are initially assigned to close custody and confined in restrictive housing pursuant to the Classification Manual.  In accordance with the Manual, and a few days after Files' arrival at Kilby, correctional officials assigned him to close custody and placed him in restrictive housing under administrative segregation. He remained so confined from December 29, 2017 until January 26, 2018.  Although certain privileges may have been restricted for inmates in the segregation unit, it is undisputed that Files could exercise in his cell at most times during the day; was allowed outdoor exercise, weather and staff permitting; received access to the law library via a clerk who went to the segregation unit "3 times a week to take requests for legal materials and provide legal materials"; had access to the chaplain and psychosocial staff three times per week for presentation of any issues; and received access to the mental health staff on a daily basis to raise any issues or concerns.  Doc. 36-1 at 1–2.  The segregation unit received heat from a prison-wide steam system and cooling was provided by ceiling and blower fans.  Doc. 36-1 at 2.  As stated above, Kilby maintained a contract with a private extermination company for control of pests.  Under the circumstances of this case, the court finds that Files is entitled to no relief on his due process claim.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be deprived of his liberty such that due process is required:

> The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  The

> second situation is when the state has consistently bestowed a certain benefit
> to prisoners, usually through statute or administrative policy, and the
> deprivation of that benefit imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life. *Kirby v. Siegelman*,
> 195 F.3d 1285, 1290–91 (11th Cir. 1999) (quotation omitted) (citing *Sandin
> v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006); *Bass v. Perrin*, 170 F.3d

1312, 1318 (11th Cir. 1999) (same).  "In the first situation, the liberty interest exists apart

from the state [and is guaranteed by the Constitution]; in the second situation, the liberty

interest is created by the state." *Bass*, 170 F.3d at 1318.

Generally, an Alabama inmate's assigned classification level is not "so severe that

it essentially exceeds the sentence imposed by the court," and the administrative

regulations governing classification "do not bestow a benefit vis-a-vis the custody

classification, the deprivation of which would result in an 'atypical and significant

hardship' on [the inmate].  *See Kirby*, 195 F.3d at 1290–91; *see also Slezak v. Evatt*, 21

F.3d 590, 594 (4th Cir.1994) (in the context of a claim based on a classification level,

holding that the U.S. Constitution affords no liberty interest in a prisoner's classification

status)[.]" *Morales*, 212 F. App'x at 890; *Sandin*, 515 U.S. at 484  (holding that an inmate

has no constitutionally protected interest in the procedure affecting his classification level

when the resulting restraint does "not exceed[] the sentence in . . . an unexpected manner"

nor does it impose an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life.").  However, Files' assignment to close custody resulted

in his placement in restrictive housing/segregation.  Thus, the court will address whether

Files' assignment to close custody and placement in restrictive housing for twenty-nine

days deprived him of due process.  After review of the record and upon application of well-settled law, the court finds that Files' due process claim fails.

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement for a limited period of time.  *Sandin*, 515 U.S. at 485–86 (holding that confinement of inmate in disciplinary segregation for 30 days does not implicate a constitutionally protected liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that confinement in segregation for two months did not deprive inmate of a constitutionally protected liberty interest); *Matthews v. Moss*, 506 F. App'x 981, 983 (11th Cir. 2013) (holding that the district court did not err in dismissing due process claims because the "complaint did not allege the deprivation of a liberty interest protected by the Due Process Clause" as "administrative confinement for short periods of 24 days and 18 days does not impose an 'atypical, significant deprivation' sufficient to give rise to a constitutionally protected liberty interest.") (citing *Sandin*, 515 U.S. at 485–87);  *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low- to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.").

As to the restrictive nature of the confinement imposed upon Files while in the restrictive housing unit, he has no constitutionally protected interest in the privileges

bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentences imposed upon him. *Sandin*, 515 U.S.at 485. Simply put, the placement of Files in restrictive housing on close custody, "though concededly punitive, [did] not represent a dramatic departure from the basic conditions" of the sentences imposed upon Files. *Id*. Thus, the challenged deprivations did not "exceed[] the sentence[s] [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Files complains involved the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court has stated:

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482–483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected

by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483–484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life."  *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

[While confinement in the restrictive housing unit may have led to the plaintiff's] loss of canteen, telephone, [television] and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation. The Court finds the Constitution does not grant an inmate a right in visitation, canteen, [television] and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs*., 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, CA 06–0896–WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest).  Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, [television] and visitation privileges. *Dumas v. State*, 675 So.2d 87, 88 (Ala.Crim.App.1995).

An inmate's ability to visit, to shop, [to watch television] and to use the telephone is heavily restricted while in prison, as are most aspects of an

inmate's life. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. . . . Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of [action] that should be expected by a prisoner as an incident to his criminal sentence. *See Id.* at 475, 485, 115 S.Ct. at 2296, 2301. Thus, [the plaintiff] does not have a liberty interest in canteen, visitation, [television] and telephone privileges to which due process attaches.

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5–*6 (S.D. Ala. Aug. 10, 2015).

Applying the *Sandin* test, the court finds that Files' short-term confinement in the restrictive housing unit on close custody did not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. Consequently, due process did not attach to Files' assignment to close custody and his placement in the restrictive housing unit.

### C.  Equal Protection

Files complains that his assignment to close custody and placement in segregation upon his arrival at Kilby deprived him of equal protection because other inmates transferred from the Talladega County Jail did not receive this same classification or housing assignment.  The defendants deny that they acted in violation of  Files' equal protection rights. Specifically, the defendants maintain that the decisions challenged by Files were not based on any constitutionally impermissible reason but, instead, were based on his receiving sentences of life without parole for his capital murder convictions.   Doc. 27-2 at 1; Doc. 27-4 at 1; Doc. 27-5 at 1.  Here, the allegation of an equal protection violation fails to state a claim on which relief may be granted.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Despite the tendency of all rights 'to declare themselves absolute to their logical

extreme,' there are obviously limits beyond which the equal protection analysis may not

be pressed. . . .  The Fourteenth Amendment 'does not require absolute equality or precisely

equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross*

*v. Moffitt*, 417 U.S. 600, 611–12 (1974); *Hammond v. Auburn University*, 669 F.Supp.

1555, 1563 (M.D.Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment

does not require all persons to be treated either identically or equally.").  In order to present

a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must

[at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received

more favorable treatment; and (2) the state engaged in invidious discrimination against him

based on race, religion, national origin, or some other constitutionally protected basis.

*Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob.*

*Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of*

*Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006).  "[O]fficial action will not be held

unconstitutional solely because it results in a . . . disproportionate impact. . . .  Proof of . .

. discriminatory intent or purpose is required to show a violation of the Equal Protection

Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429

U.S. 252, 264–65 (1977).  "'Discriminatory purpose' . . . implies more than intent as

volition or intent as awareness of consequences.  It implies that the decision maker . . .

selected . . . a particular course of action at least in part 'because of,' not merely 'in spite

of,' its adverse effects upon an identifiable group." *Personnel Administrator of*

*Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see*

*also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates

disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Moreover, where a plaintiff challenges the actions of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Since this case is before the court on a properly supported motion for summary judgment submitted by the defendants, Files bears the burden of producing evidence which would be admissible at trial sufficient to show that (1) the defendants provided more favorable treatment to other similarly situated inmates, i.e., inmates received at Kilby with a sentence of life without parole; and (2) the decision to deny him favorable treatment resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322–24; *Anderson*, 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *Arlington Heights*, 429 U.S. at 265 (At the summary judgment stage, the plaintiff must produce specific, substantial evidence that the defendants intentionally discriminated against him due to a constitutionally protected interest.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary

judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Here, Files fails to identify any similarly situated inmate—*i.e.*, an inmate transferred from the Talladega County Jail sentenced to life without parole—who received differential favorable treatment from the defendants.  Thus, Files' "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319.  This claim likewise provides no basis for relief

> because [Files] has not alleged . . . that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin.  *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration . . . of a state statute fair on its face, resulting in its     unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."  (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92–93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  Thus, Files is entitled to no relief on his claim of an equal protection violation.

### D.  Conspiracy

Files contends that the defendants entered into a conspiracy to deprive him of his constitutional rights. Doc. 13 at 6 (The defendants "conspired together, in an alleged conspiracy against the Plaintiff[.]").  However, other than this conclusory allegation, no factual details to support or describe the alleged conspiracy are pled.  As a consequence, Files has failed to state a plausible conspiracy claim.

Applicable federal law directs that in order to state a conspiracy claim cognizable under 42 U.S.C. § 1983 a plaintiff "must show an underlying actual denial of [his] constitutional rights." *GJR Investments, Inc. v County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998), *rev'd on other grounds, see Randall v. Scott*, 610 F.3d 707, 709 (11th Cir. 2010).  "[A] plaintiff 'must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.) (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.), *cert. denied*, 500 U.S. 932 (1991)).  "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Id.*  The mere stringing together of events, without a showing of contacts demonstrating that an understanding was reached, is not sufficient.  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).  In addition, vague and conclusory allegations of a conspiracy are subject to dismissal.  *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984).

The simple allegation of a conspiracy made by Files is not based on any underlying constitutional violation.  The conspiracy claim therefore provides no basis for relief.  Files likewise fails to present any evidence that the defendants reached an understanding to deny him any right, and his allegation of a conspiracy is so vague it fails to meet the minimal pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. at 662, 678 (2009) ("A pleading that offers 'labels and conclusions . . . will not do.' ").  Other than his conclusory allegation of a conspiracy, Files presents nothing which suggests the existence of an actual conspiracy by defendants to deprive Files of his constitutional rights.  The plaintiff's mere statement that a conspiracy existed, without more, fails to state a claim upon which relief can be granted.  *GJR Investments*, 132 F.3d at 1370.

## E  Disposition of Constitutional Claims

Since the defendants did not act in violation of Files' constitutional rights, they are entitled to qualified immunity from the request for monetary damages made against them in their individual capacities.  Moreover, due to the lack of any violation of Files' constitutional rights, he is likewise due no other relief from the defendants.  Summary judgment is therefore due to be granted in favor of the defendants on the claims alleging violations of rights protected by the Constitution.

## F.  Supplemental Jurisdiction – State Tort of Outrage

In the amended complaint, Files seeks relief on a pendent state tort law claim of outrage for the alleged violation of his due process rights.  Doc. 13 at 8.  Review of this claim is appropriate only upon exercise of this court's supplemental jurisdiction.

Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3567 pp. 443–47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). As the court has jurisdiction over the claims alleging violations of the Constitution and the claim alleging a violation of Files' constitutional right to due process has a common nucleus of fact with the state tort claim, the court deems it appropriate to exercise supplemental jurisdiction over Files' claim that the actions of the defendants constituted outrage in violation of Alabama law.

Alabama law explains the tort of outrage in the following terms:

"[W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . .  By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1106 (S.D. Ala. 2005);

*Fitch v. Voit*, 624 So.2d 542, 544 (Ala.1993).

> While Alabama courts do recognize this tort, they have consistently deemed it a "very limited cause of action that is available only in the most egregious circumstances." . . . . Alabama law [is clear that] a plaintiff cannot prevail on an outrage claim unless [he/]she establishes that the defendant[s'] conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."

*Lees*,  391 F. Supp. 2d at 1106 (internal quotation marks and citations omitted);

The record before the court establishes that the defendants' challenged acts did not rise to the level of extreme and outrageous conduct.  Also, the record is devoid of any evidence that Files suffered the requisite severe emotional distress.  Accordingly, Files is due no relief on his state tort claim of outrage.

## VI.  CONCLUSION

For the above stated reasons, it is ORDERED that:

1.  The defendants' motion for summary judgment is GRANTED.

2.  Judgment is GRANTED in favor of the defendants on all of the plaintiff's claims.

3.  This case is DISMISSED with prejudice.

4.  The costs of this proceeding are taxed against the plaintiff.

A separate final judgment will be entered.

DONE on this the 26th day of January, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge